**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LARRY RUMBOUGH,

      Plaintiff,

v.                                                                    Case No:   6:17-cv-956-Orl-18GJK

COMENITY CAPITAL BANK, COMENITY LLC, COMENITY SERVICING LLC, ALLIANCE DATA, BJ'S WHOLESALE CLUB, INC., ANTHONY NEWSOME, JANE DOE, MCGLINCHEY STAFFORD PLLC, JENNIFER M. CHAPKIN, LISA M. SCHILLER, MARGARET HIGHTOWER, EQUIFAX INFORMATION SERVICES LLC, EQUIFAX CONSUMER AFFAIRS, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, JAMES M. PECK, SAMUEL A. HAMOOD, JOHN W. BLENKE, CHRISTOPHER A. CARTWRIGHT, JOHN T. DANAHER, MOHIT KAPOOR, CURTIS J. MILLER, JULIE SPRINGER, INNOVIS DATA SOLUTIONS, INC and NATIONAL CONSUMER TELECOM & UTILITIES EXCHANGE,

      Defendants.

## ORDER

THIS CAUSE comes for consideration on Defendant Innovis Data Solutions, Inc.'s ("Innovis") Motion to Dismiss (Doc. 67), to which Plaintiff Larry Rumbough ("Rumbough") did not file a response in opposition. THIS CAUSE also comes for consideration on the Court's own initiative to determine whether the entirety of Plaintiff Larry Rumbough's ("Rumbough") claims

against the *Rumbough II* Defendants [1] are subject to dismissal based on the doctrine of impermissible claim-splitting.[2]

## I. BACKGROUND

On December 29, 2015, Rumbough requested a membership account with BJ's. (Doc. 1 ¶ 32.) Rumbough was subsequently approved to become a BJ's member, and Comenity issued a BJ's credit card in Rumbough's name (the "Account"). (*Id.* ¶¶ 32-33.) Commencing on December 29, 2015 and continuing until February 28, 2017, one or more of the *Rumbough II* Defendants obtained Rumbough's credit report from Equifax and/or Experian and "used or obtained [Rumbough's] consumer report for an impermissible purpose and did not certify the purpose through a general or specific certification." (*Id.* ¶¶ 34-39.)

On June 1, 2016, Rumbough notified Comenity that he demanded the inquiry dated December 29, 2015 be deleted from his Equifax credit report; however, Comenity denied Rumbough's request via letter with an attached Credit Card Agreement. (*Id.* ¶¶ 40-41.) Allegedly, this was the first time that Rumbough saw the Credit Card Agreement. (*Id.* ¶ 41.) Thereafter, on July 21, 2016, Rumbough sent a letter to Comenity "rejecting the Credit Card Agreement in its entirety." (*Id.* ¶ 42.) Rumbough sent an e-mail to Schiller on December 19, 2016 demanding validation of the Account debt. (*Id.* ¶ 44.) On the same day, Schiller replied to

---

[1] The Court will hereafter collectively refer to the twenty-five (25) defendants in this case as the *Rumbough II* Defendants. Individually, the defendants will be referenced as Comenity Capital Bank ("Comenity"), Comenity LLC, Comenity Servicing LLC, Alliance Data, BJ's Wholesale Club ("BJ's"), Anthony Newsome ("Newsome"), Jane Doe ("Doe"), McGlinchey Stafford PLLC ("McGlinchey"), Jennifer M. Chapkin ("Chapkin"), Lisa M. Schiller ("Schiller"), Margaret Hightower ("Hightower"), Equifax Information Services LLC ("Equifax"), Equifax Consumer Affairs, Experian Information Solutions ("Experian"), Trans Union LLC ("Trans Union"), James M. Peck ("Peck"), Samuel A. Hamood ("Hamood"), John W. Blenke ("Blenke"), Christopher A. Cartwright ("Cartwright"), John T. Danaher ("Danaher"), Mohit Kapoor ("Kapoor"), Curtis J. Miller ("Miller"), Julie Springer ("Springer"), Innovis Data Solutions, Inc. ("Innovis"), and National Consumer Telecom & Utilities Exchange ("National").

[2] The Court is cognizant that there are various, pending motions to dismiss in this case (*see* Docs. 27, 46, 47), as well as a Notice of Pending Settlement between many of the parties (*see* Doc. 82). However, based on the specific circumstances of this case, a *sua sponte* consideration of dismissal based on claim-splitting is appropriate.

Rumbough's e-mail but did not validate the alleged debt. (*Id.* ¶ 45.) Further, Rumbough sent certified letters to McGlinchey, Chapkin, and Schiller on December 19, 2016 demanding validation of the Account debt, to which Chapkin responded without validating the Account debt. (*Id.* ¶¶ 46-47.) Rumbough also sent dispute letters to Equifax and Trans Union "regarding inaccuracies on his credit report reported by Comenity on May 23, 2016." (*Id.* ¶¶ 58, 70.) Rumbough subsequently sent dispute letters to Equifax, Experian, and Trans Union "regarding inaccuracies on his credit report reported by Comenity on August 19, 2016." (*Id.* ¶¶ 60, 65, 71.) Thereafter, Rumbough sent dispute letters to Equifax, Experian, and Trans Union "regarding inaccuracies on his credit report reported by Comenity on December 2, 2016." (*Id.* ¶¶ 62, 67, 72.) Rumbough also sent a dispute letter to Innovis "regarding inaccuracies on his credit report reported by Comenity on June 14, 2016." (*Id.* ¶ 94.) Equifax, Experian, Trans Union, and Innovis "refused to delete, correct, place in dispute, and/or print [Rumbough's] consumer statement for the alleged Comenity account." (*Id.* ¶¶ 59, 61, 63-64, 66, 68-69, 73-74, 95.) Rumbough called Innovis on May 5, 2017, and "Innovis informed [Rumbough] that the Comenity account was not indicated as in dispute." (*Id.* ¶ 96.)

On May 27, 2016, June 2, 2016, June 9, 2016, and September 13, 2016, Trans Union sent identical letters to Rumbough advising Rumbough, amongst other items, that it "no longer maintains a commercially available credit file for [him] and in turn cannot fulfill [his] request." (*Id.* ¶ 75.) Rumbough subsequently filed a complaint about the purging of his credit report with the Consumer Financial Protection Bureau ("CFPB"). (*Id.* ¶ 77.) Trans Union's response to the complaint includes, amongst other statements, the statement that it "does not maintain a file on the consumer, as that term is defined in the Fair Credit Report Act, 15 USC [§] 1681a(g)." (*Id.*) The CFPB did not take any action against Trans Union. (*Id.* ¶ 78.) Allegedly, Trans Union refuses

to inform Rumbough who has requested or received his credit report, and "Trans Union's purging makes it difficult for [Rumbough] to obtain credit in general and permanently prevents him from being eligible to obtain a mortgage, which he would otherwise do." (*Id.* ¶ 87-88.)

Additionally, in May 2015, Equifax, Experian, and Trans Union provided Rumbough's credit report to him upon his request. (*Id.* ¶ 91.) The following year, Rumbough attempted to obtain his credit report from Equifax, Experian, and Trans Union on www.annualcreditreport.com, but only Equifax provided his credit report. (*Id.* ¶ 92.) Thereafter, in May 2017, Rumbough again attempted to obtain his credit report from Equifax, Experian, and Trans Union on www.annualcreditreport.com; however, only Equifax and Experian provided his credit report. (*Id.* ¶ 93.) Additionally, on August 9, 2016, Equifax Consumer Affairs obtained Rumbough's credit report from Equifax. (*Id.* ¶ 97.) Rumbough alleges that Equifax obtained his credit report from National 115 times between June 17, 2014 and June 10, 2016 "for an impermissible purpose and did not certify the purpose through a general or specific certification." (*Id.* ¶ 99.)

Amongst other allegations, Rumbough avers that Comenity, Comenity LLC, Chapkin, Schiller, and Hightower have all knowingly attempted to collect nonexistent debt from him through their efforts to collect on the Account. (*Id.* ¶ 43.) Rumbough states that "Commenity, Comenity LLC, McGlinchey, Chapkin, Schiller, and Hightower have knowingly engaged in a conspiracy to concoct a nonexistent contract between Comenity and [Rumbough]." (*Id.* ¶ 53.) Rumbough also states that Comenity reported false information about him to credit reporting agencies without providing him written notice of same, and that Comenity repeatedly failed to properly investigate his disputes and inform the credit reporting agencies that the Account was in dispute. (*Id.* ¶¶ 54-57.) Purportedly, "Trans Union, Peck, Hamood, Blenke, Cartwright, Danaher, Kapoor, Miller, and Springer have knowingly engaged in a conspiracy to falsely portray

[Rumbough's] credit as nonexistent solely in an effort to damage him." (*Id.* ¶ 84.) Further, Rumbough states that "Peck, Hamood, Blenke, Cartwright, Danaher, Kapoor, Miller, and Springer obtained [his] credit report in violation of § 1681q." (*Id.* ¶ 85.) Rumbough also maintains that "[b]y its purging of [Rumbough's] credit report, Trans Union is almost certainly violating its contract with furnishers of information to accurately report [Rumbough's] credit information." (*Id.* ¶ 86.) Additionally, Rumbough claims that Comenity and Comenity LLC called him on numerous occasions "attempting to collect on a nonexistent debt and as a telephone solicitation." (*Id.* ¶ 101.)

On May 25, 2017 Rumbough filed the Complaint (Doc. 1) in this case against the *Rumbough II* Defendants for purported violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"), section 559.55, *et seq.*, Florida Statutes., the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Florida Statutes, *et. seq.* ("FDUTPA"). In Count I, Rumbough claims that Comenity, Comenity LLC, Comenity Servicing, Alliance, BJ's, Newsome, Doe, Equifax, Equifax Consumer Affairs, Experian, Trans Union, Peck, Hamood, Blenke, Cartwright, Danaher, Kapoor, Miller, Springer, Innovis, and National violated the FCRA. (*Id.* ¶¶ 102-07.) In Count II, Rumbough alleges that Comenity, Comenity LLC, McGlinchey, Chapkin, Schiller, and Hightower violated the FDCPA. (*Id.* ¶¶ 108-11.) In Count III, Rumbough states that Comenity, Comenity LLC, McGlinchey, Chapkin, Schiller, and Hightower violated the FCCPA. (*Id.* ¶¶ 112-15.) In Count IV, Rumbough alleges that Comenity and Comenity LLC violated the TCPA. (*Id.* ¶¶ 116-18.) In Count V, Rumbough attempts to state a claim against Comenity, Comenity LLC, McGlinchey, Chapkin, Schiller, Hightower, Trans

Union, Peck, Hamood, Blenke, Cartwright, Danaher, Kapoor, Miller, and Springer for violating the FDUTPA. (*Id.* ¶¶ 119-22.)

## II. LEGAL STANDARD

A properly plead complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the factual allegations in the complaint as true and must then determine whether the allegations "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Evaluation of a complaint requires a two-step inquiry: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the pleading standard set forth in Rule 8 does not require in depth factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 570). Dismissal of an action is appropriate "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Also, "[w]hile the pleadings of pro se litigants are 'liberally construed,' *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). The Court is under no obligation to rewrite a pleading for a pro se party.

*Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (citing *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993)).

## IV. ANALYSIS

*A. Rumbough I*

On July 21, 2016, approximately ten (10) months prior to Rumbough's initiation of the instant case, Rumbough filed a complaint (the "*Rumbough I* Complaint") against Comenity, BJ's, Equifax, Experian, Trans Union, and Innovis (collectively, the *Rumbough I* Defendants) for their purported violations of the FCRA, FDCPA, and the FCCPA. *See Larry Rumbough v. Comenity Capital Bank et al*, Case No. 16-cv-01305-GKS ("*Rumbough I*"). The Court takes judicial notice of the docket and court file in *Rumbough I*. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("[p]ublic records are among the permissible facts that a district court may consider" on a motion to dismiss).

As set forth in the *Rumbough I* Complaint, Rumbough requested a membership account with BJ's on December 29, 2015. (*Rumbough I* Doc. 1 ¶ 13.) Rumbough was subsequently approved to become a BJ's member, and Comenity issued a BJ's credit card in Rumbough's name (the "Account"). (*Id.* ¶¶ 13-14.) Subsequently, Comenity allegedly attempted to collect nonexistent debt from Rumbough, reported false information about Rumbough to credit reporting agencies without providing Rumbough written notice of same, and repeatedly failed to properly investigate Rumbough's disputes and inform the credit reporting agencies that the Account was in dispute. (*Id.* ¶¶ 15-19.) Rumbough sent dispute letters to Equifax, Experian, and Trans Union "regarding inaccuracies on his credit report reported by Comenity on May 23, 2016." (*Id.* ¶¶ 20-22.) Rumbough also sent a dispute letter to Innovis "regarding inaccuracies on his credit report

reported by Comenity on June 14, 2016." (*Id.* ¶ 23.)  Equifax, Experian, Trans Union, and Innovis "refused to delete, correct, place in dispute, and/or print [Rumbough's] consumer statement for the Comenity item." (*Id.* ¶ 24.)  Amongst other alleged failings, Equifax, Experian, Trans Union, and Innovis purportedly failed to provide personnel to explain to Rumbough the information in his file, failed to delete inaccurate information in Rumbough's file after being advised of such by Rumbough, failed to provide subsequent users of the report with Rumbough's statement of dispute or a summary thereof, failed to permanently correct Rumbough's report after repeated notification by Rumbough, and failed to properly reinvestigate Rumbough's disputes. (*Id.* ¶ 25.)  Additionally, on December 29, 2015, Comenity and BJ's obtained Rumbough's credit report from Equifax "for an impermissible purpose and did not certify the purpose through a general or specific certification." (*Id.* ¶ 26.)  Subsequently, on May 31, 2016, Comenity again obtained Rumbough's credit report from Equifax "for an impermissible purpose and did not certify the purpose through a general or specific certification." (*Id.* ¶ 27.)  On June 1, 2016, Rumbough notified Comenity that he demanded the inquiry dated December 29, 2015 be deleted from his Equifax credit report; however, Comenity denied Rumbough's request via letter with an attached Credit Card Agreement. (*Id.* ¶¶ 28-29.)  Thereafter, on July 21, 2016, Rumbough sent a letter to Comenity "rejecting the Credit Card Agreement in its entirety." (*Id.* ¶ 30.)  On the same day, Rumbough filed the *Rumbough I* Complaint (Doc. 1).  In Count I, Rumbough claims that the *Rumbough I* defendants violated the FCRA. (*Id.* ¶¶ 31-36.)  In Count II, Rumbough alleges that Comenity violates the FDCPA.  In Count III, Rumbough states that Comenity violated the FCCPA.

*B. Application of the Claim-Splitting Doctrine*

"The 'claim-splitting doctrine' applies where a second suit has been filed before the first suit has reached a final judgment." *Zephyr Aviation III, L.L.C. v. Keytech Ltd.*, No. 8:07-CV-227-T-27TGW, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008) (citations omitted). "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits[,] . . . parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)). The claim-spitting doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" *Greene v. H &R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)). Further, "when necessary, the court may raise the question of claim or issue preclusion sua sponte." *Alyeska v. Pipeline Service Co. v. U.S.*, 688 F.2d 765, 771 (Ct. Cl. 1982).

"[F]ederal courts borrow from the *res judicata* test for claim preclusion to determine whether [a] plaintiff['s] claims were split improperly." *Khan v. H & R Block E. Enters., Inc.*, No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011) The Eleventh Circuit has followed the Tenth Circuit's test for claim-splitting after finding that said test "makes sense, given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative legislation." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quotation marks and citation omitted). The first prong of the claim-splitting test requires the Court to determine "whether the case involves the same parties and their privies." *Id.* at 841-42 (quoting *Khan*, 2011 WL 3269440, at *6.) For the second prong of the claim-splitting test, the

Court analyzes "whether separate cases arise from the same transaction or series of transactions." *Id.* at 842 (quoting *Khan*, 2011 WL 3269440, at *6.) "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)).

Although Rumbough added defendants in *Rumbough II*, most of the additional defendants are in privity with one or more of the *Rumbough I* Defendants. Defendants Comenity LLC, Comenity Servicing, and Alliance Data are in privity with Comenity as they are either an employee or affiliate agent of Comenity that acted on Comenity's behalf. (*See* Doc. 46 at 5; Doc. 64 at 1.) Likewise, the Court has no reason to doubt that Equifax Consumer is in privity with Equifax. Further, Newsome and Doe are in privity with BJ's as employees of BJ's. (*See* Doc. 1 ¶¶ 11-12.) Additionally, McGlinchey is the law firm that represents Comenity and BJ's in both cases, and Chapkin and Schiller are in privity with McGlinchey as McGlinchey employees. (*See id.* ¶¶ 14-15.) Similarly, Peck, Hamood, Blenke, Cartwright, Danaher, Kapoor, Miller, and Springer are in privity with Trans Union as employees of Trans Union. (*See id.* ¶¶ 21-28.) The only defendant that Rumbough filed suit against in *Rumbough II* that is not a named defendant in *Rumbough I* or at least clearly in privity with a *Rumbough I* Defendant is National. Thus, with the exception of National, both cases involve the same parties or their privies and satisfy the "identity of the parties" prong of the claim-splitting doctrine.

In addition, Rumbough purports to bring causes of action for violations of the FCRA, the FDCPA, and the FCCPA in both *Rumbough I* and *Rumbough II*. However, in *Rumbough II*, Rumbough attempts to bring additional causes of action for violations of the TCPA and the FDUTPA. Still, application of the claim-splitting doctrine is not defeated by the presence of these

additional causes of action. *See Trustmark Ins. v. ESLU, Inc.*, 299 F.3d 1265, 1270 (11th Cir. 2002) (holding that res judicata prevented a plaintiff from bringing successive lawsuits for separate breaches of the same contract, committed by the same party, and involving the same general type of conduct even though different causes of action were alleged); *see also Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000) (holding that the rule against claim-splitting barred ERISA lawsuit where the first lawsuit was filed under Title VII and ADEA because both cases arose out of "the same transactional nucleus of facts, and would involve substantially the same evidence"). Importantly, the claims that Rumbough asserts in both *Rumbough I* and *Rumbough II* are based on the same nucleus of operative facts. Rumbough's claims indisputably arise out of the origination, subsequent servicing, and collection of debt owed on the Account. The factual bases for both of Rumbough's lawsuits "are related in time, origin, and motivation, and they form a convenient trial unit." *See Vanover*, 857 F.3d at 842 (applying the claim-splitting analysis and precluding plaintiff from splitting claims among lawsuits). After careful review of Rumbough's claims in *Rumbough I* as compared to Rumbough's claims in *Rumbough II*, the Court finds that both prongs of the claim-splitting analysis are satisfied with respect to Rumbough's claims against all of the *Rumbough II* Defendants except National. Hence, Rumbough's claims in *Rumbough II*, except Rumbough's claims against National, are due to be dismissed for improper claim-splitting.[3]

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendant Innovis Data Solutions, Inc.'s ("Innovis") Motion to Dismiss (Doc. 67) is

---

[3] As to Rumbough's claims again National, Rumbough states that National violated the FCRA under the heading for Count I, but he fails to specifically delineate his claims against National. Additionally, it appears that Rumbough failed to serve National within the requisite ninety (90) day time period set forth in Rule 4(m) of the Federal Rules of Civil Procedure. These errors are significant and will likely be addressed at a later date.

**GRANTED**.

2. Count I of Plaintiff Larry Rumbough's Complaint (Doc. 1) is **DISMISSED** as to Plaintiff Larry Rumbough's claims against all Defendants except Defendant National Consumer Telecom & Utilities Exchange.

3. Count II and Count III of Plaintiff Larry Rumbough's Complaint (Doc. 1) are **DISMISSED**.

4. Further, the Clerk of Court is directed to **TERMINATE** Defendants Comenity Capital Bank, Comenity LLC, Comenity Servicing LLC, Alliance Data, BJ's Wholesale Club, Inc., Anthony Newsome, Jane Doe, McGlinchey Stafford PLLC, Jennifer M. Chapkin, Lisa M. Schiller, Margaret Hightower, Equifax Information Services LLC, Equifax Consumer Affairs, Experian Information Solutions, Inc., Trans Union LLC, James M. Peck, Samuel A. Hamood, John W. Blenke, Christopher A. Cartwright, John T. Danaher, Mohit Kapoor, Curtis J. Miller, Julie Springer, and Innovis Data Solutions, Inc. as parties to this action.

5. The Clerk of Court is directed to **TERMINATE** all pending motions (Docs. 27, 46, 47, 66).

**DONE** and **ORDERED** in Orlando, Florida on this ___6___ day of November, 2017.

**G. KENDALL SHARP**
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties